UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENERAL INSURANCE COMPANY OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RITA IRENE NUNEZ, MELCHOR TATIA, ISAAC QUIROZ, PAUL LOPEZ, VERONICA LOPEZ, and DOES 1 to 10,<br><br>Defendants. | Case No.  1:20-cv-01435-JLT-BAM<br><br>**FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS RITA IRENE NUNEZ, MELCHOR TATIA, AND ISAAC QUIROZ**<br><br>(Doc. 26)<br><br>**FOURTEEN (14) DAY DEADLINE** |

On November 16, 2021, Plaintiff General Insurance Company of America ("Plaintiffs"), filed two motions for default judgment. First, against Rita Irene Nunez, Melchor Tatia, and Isaac Quiroz (collectively the "Insured Defendants"). (Doc. 26.) Second, against Paul and Veronica Lopez (the "Lopez Defendants"). (Doc. 27.)[1] Rita Irene Nunez, Melchor Tatia, Isaac Quiroz, Paul Lopez and Veronica Lopez (collectively "Defendants") are all of the named defendants. The Court deemed the matter suitable for decision without oral argument pursuant to Local Rule 230(g) and vacated the hearing set for January 7, 2022. (Doc. 28.) Defendants have not appeared in this action or otherwise filed a timely opposition to the motion.

---

[1] Plaintiff's motion for default judgment against Defendants Paul and Veronica Lopez will be handled by separate order.

1

This order is limited to the Motion for default judgment filed against Defendants Nunez, Tatia, and Quiroz. Having considered the moving papers and the Court's file, the Court RECOMMENDS that Plaintiff's motion for default judgment be GRANTED and that judgment be entered against Defendants Rita Irene Nunez, Melchor Tatia, and Isaac Quiroz.

**I.   FACTUAL BACKGROUND**

This is an action for declaratory judgment that Plaintiff General Insurance Company of America has no duty to defend or indemnify Defendants Isaac Quiroz, Melchor Tatia, or Rita Irene Nunez stemming from an underlying action, where Defendant Quiroz was charged with providing Alexander Davila ("Decedent") with a controlled substance resulting in Davila's death, in the action filed on February 5, 2021. (Doc. 1.)  Plaintiff is the issuer of a homeowner's insurance policy for Defendant Nunez. (Doc. 1, ¶ 11.) Defendant Nunez is the holder of the policy and resides with her husband, Defendant Tatia, and her son, Defendant Quiroz. (Defendants Nunez, Tatia, and Quiroz are collectively "the Insured Defendants"). (Doc. 1, ¶¶ 4-5.) Plaintiff alleges it has no duty to defend or indemnify the Insured for any litigation brought against it arising out of or related to the underlying claim based on the terms of the homeowner's policy. (Doc. 26 at 2.)

The Insured Defendants were served with copies of the summons and complaint but failed to appear or otherwise respond. (*See* Doc. 26.) On July 7, 2021, Plaintiff filed a request for entry of default for Defendants Nunez, Tatia, and Quiroz. (Doc. 15.) The Clerk of Court entered default against Defendants Nunez, Tatia, and Quiroz on July 8, 2021. (Docs. 16, 17, 18.) On November 16, 2021, Plaintiff filed the instant motion for default judgment. (Docs. 26.) By the motion, Plaintiff requests declaratory relief as follows: (1) a declaration and order that Plaintiff has no duty, and never had a duty, to defend the Insured against the underlying third-party liability claims, (2) a declaration and order that Plaintiff has no duty, and never had a duty, to indemnify the Insured in the underlying claim, and (3) a declaration and order that the Insured are obligated to reimburse Plaintiff all defense fees and costs it has incurred in providing them with a defense in the underlying claim.

///

**II.     DISCUSSION**

**A. Service of Process**

In deciding whether to grant or deny a default judgment, a court should assess the adequacy of the service of process on the party against whom default is requested. *See, e.g., Farmers Automobile Insurance Ass'n v. Long,* 2014 WL 12773793 at *1 (E.D. Cal. Mar. 13, 2014); *Coach, Inc. v. Diva Shoes & Accessories*, 2011 WL 1483436 at *2 (N.D. Cal. Apr. 19, 2011); *Katzakian v. Check Resolution Service, Inc.*, 2010 WL 5200912 at *2 (E.D. Cal. Dec. 15, 2010).

Federal Rule of Civil Procedure 4 sets forth the requirements for serving an individual within a judicial district of the United States. An individual may be served by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
> > (A) delivering a copy of the summons and of the complaint to the individual personally;
> >
> > (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> >
> > (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

California law, in turn, permits substituted service upon an individual by:

> "leaving a copy of the summons and complaint . . . at his or her usual mailing address . . . with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail."

Cal. Code Civ. P. § 415.20(a).

According to the proofs of service on file, Defendants Nunez and Quiroz were served personally at their address of 539 Lynn Ave., Dinuba, CA, 93618. (Docs. 10, 11.) According to the proof of service on file, Defendant Tatia was served by substitute service by leaving copies with his spouse, Defendant Nunez, also a resident of the home, at their address of 539 Lynn Ave.,

Dinuba, CA, 93618. (Doc. 12.)  Accordingly, the Court finds that Plaintiffs properly served the Insured Defendants pursuant to Federal Rule of Civil Procedure 4(e)(1) and (2)(A)-(B).

### B. The *Eitel* Factors Weigh in Favor of Default Judgment

Pursuant to Federal Rule of Civil Procedure 55(b)(2), a plaintiff can apply to the court for a default judgment against a defendant that has failed to plead or otherwise defend against the action.  Fed. R. Civ. P. 55(b)(2).  "Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true." *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.,* 722 F.2d 1319, 1323 (7th Cir. 1983); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986); *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1174 (C.D. Cal. 2002).  As discussed below, the Court finds that these *Eitel* factors weigh in favor of granting default judgment.

#### 1. Possibility of Prejudice to Plaintiff

The first factor considers whether a plaintiff would suffer prejudice if default judgment is not entered. *See PepsiCo, Inc.,* 238 F.Supp.2d at 1177.  Generally, where default has been entered against a defendant, a plaintiff has no other means by which to recover against that defendant. *Id.; Moroccanoil, Inc. v. Allstate Beauty Prods*., 847 F.Supp.2d 1197, 1200-01 (C.D. Cal. 2012). Here, the Court finds Plaintiff would be prejudiced if default judgment is not granted and this factor weighs in favor of default judgment.

#### 2. Merits of Plaintiff's Claims and Sufficiency of the Complaint

The second and third *Eitel* factors, taken together, "require that [the] plaintiff[s] state a claim on which [they] may recover." *PepsiCo, Inc.,* 238 F. Supp. 2d at 1175.  Notably a

4

1   "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."
2   *DIRECTV, Inc. v. Hoa Huynh,* 503 F.3d 847, 854 (9th Cir. 2007).

        a.  *Duty to Defend: The Underlying Claim Does not Fall Within the Insuring Agreement*

In determining whether a particular policy provides coverage and a duty to defend, courts interpretate the insurance policy as a question of law. *Waller v. Truck Ins. Exchange, Inc,* 11 Cal.4th 1, 18 (1995). In interpreting the policy, the court looks at the language of the contract to ascertain its plain meaning. *Waller,* 11 Cal. 4th at 18. Courts need to consider both the occurrence language in the policy and any endorsements that may expand the coverage. *Id.* Contract provisions will be interpreted for their ordinary and popular meaning, unless otherwise specified. *Id.* However, a provision may be considered ambiguous if there is more than one possible construction that is reasonable. *Id.*

A duty to defend arises when the insurer becomes aware of, or if the third-party lawsuit pleads, facts that could potentially fall under the coverage of the insuring agreement. *Gray v. Zurich Ins., Co.,* 65 Cal.2d 263, 276 (1966). Nonetheless, where there is no possibility that the facts plead would be covered, there is no duty to defend. *Waller,* 11 Cal.4th at 19 (citing *Fire Ins. Exchange v. Abbott,* 204 Cal.App.3d 1012, 1029 (Cal. Crt. App. 6th 1988). The determination of whether there is a duty to defends is made by first comparing the allegations of the complaint with the terms of policy. *Id.* Facts that are extrinsic to the complaint may give rise to a duty to defend if they reveal there is a possibility of coverage, conversely, if the extrinsic facts eliminate the potential for coverage an insurer may decline to defend even when the allegations in the complaint imply liability. *Id.*

The underlying claim is based on an incident where Defendant Quiroz provided the decedent with a controlled substance, fentanyl, which the decedent ingested resulting in his death. (Doc. 26 at 6.) On October 29, 2020, the Lopez Defendants brought a claim against the Insured Defendants seeking damages for the death of their son. (Doc. 26 at 9.) The underlying claim alleged that on or about May 29, 2020, at the Insureds Defendants' residence, Defendant Quiroz provided the decedent a drug that was laced with fentanyl, the ingestion of which resulted in the

decedent's death. (*Id.*) During Plaintiff's investigation of the underlying claim, the Lopez's counsel informed Plaintiff that Defendant Quiroz had admitted to providing the fentanyl to the decedent and was charged with criminal negligence and felonious furnishing of fentanyl by the District Attorney. (*Id.*)

Here, the policy states:

> "If a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will provide a defense at our expense by counsel of our choice even if the allegations are groundless, false or fraudulent."

(Doc. 26-1, Exh. A at 33.) The policy also explicitly excludes the following from coverage:

> "[Personal liability and Medical payment to others] do not apply to bodily injury or property damages which is expected or intended by any insured or which is the foreseeable result of an act or omission intended by any insured; this exclusion applies even if (1) such bodily injury or property damage is of a different kind or degree than expected or intended, or (2) such bodily injury or property damage is sustained by a different person, or persons, than expected or intended."

(*Id.*) Further, the policy provides definitions for both bodily injury and occurrence as follows:

> "'Bodily injury' means bodily harm, sickness or disease, including required care, loss of services and death resulting therefrom."
> "'occurrence' means an accident, including exposure to conditions which results in (1) bodily injury, or (2) property damage."

(Doc. 26-1, Exh. A at 43, 44.) Furthermore, the policy addresses coverage where a criminal act is involved:

> "[Personal liability and Medical payment to others] do not apply to bodily injury or property damages which results from violation of criminal law committed by, or with the knowledge or consent of any insured. This exclusion applies whether to not any insured is charged or convicted of a violation of criminal, or local or municipal ordinance."

(Doc. 26-1, Exh. A at 33.) Even more specifically, the policy addresses the sale and transfer of controlled substances:

> "[Personal liability and Medical payment to others] do not apply to bodily injury or property damages arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and

6

> 812. Controlled substance includes but are not limited to cocaine, LSD, marijuana and all narcotic drugs."

(Doc. 26-1, Exh. A at 36.) Fentanyl is a schedule II drug. 21 U.S.C. § 812.

Plaintiff argues that Defendant Quiroz's actions cannot be considered an accident or occurrence under the policy because his actions were deliberate. The Court agrees. Defendant Quiroz provided the decedent with a controlled substance which caused the decedent's death. Under the policy, coverage does not extend to a bodily injury, including death, which is a foreseeable result of an act of the insured. Death caused by taking a controlled substance is a foreseeable result of providing another with that controlled substance. Further, the policy also excludes any bodily injury that is of a different kind or degree than was intended or expected. Therefore, even if Defendant Quiroz did not intend that the decedent die from ingesting the fentanyl that was provided, it was foreseeable that death could be a result.

Furthermore, Defendant Quiroz's actions would be a violation of criminal law. The policy excluded bodily injury which results from violation of a criminal law by an insured. As fentanyl is a controlled substance under 21 U.S.C. § 812, its distribution is a criminal act under 21 U.S.C. § 841. Therefore, under the terms of the policy, Plaintiff would not have a duty to defend.

### b. Duty to Indemnify

"The duty to indemnify and the duty to defend are correlative." *Certain Underwriters at Lloyds of London v. Superior Court,* 24 Cal.4th 945, 958 (2011) (citing *Ryan v. Royal Ins. Co. of America,* 916 F.2d 731, 735 (1st Cir. 1990). However, the duty to indemnify is only triggered after the amount of damages are fixed and only entails the payment of money. *Certain,* 24 Cal.4th at 958 (citing *Aerojet-General Corp. v. Transport Indemnity Co.,* 17 Cal.4th 38, 46 and 56 (1997)). The duties are also different in scope, as the duty to defend must be broader than the duty to indemnify, as such where there is no duty to defend there can be no duty to indemnify. *Id.; see also Aerojet-General,* 17 Cal.4th at 59; *see also Buss v. Superior Court,* 16 Cal.4th 35, 47, fn. 10 (1997).

Here, there is no duty to defend as the policy, by its terms, does not cover death where the

decedent was provided with a controlled substance by an insured which caused the death. Therefore, there can be no duty to indemnify in this case.

### c. Reimbursement of Defense Fees and Costs

For claims that may at least potentially be covered by a policy, an insurer cannot seek reimbursement of costs and fees incurred by providing a defense, as such costs are bargained in the contract and covered by premiums. *Buss,* 16 Cal.4th at 50. However, where there is no duty to defend because the claim would not even potentially be covered by a policy, an insurer may seek reimbursement for defense costs. *Id.* (citing *Hogan v. Midland National Ins. Co.*, 3 Cal. 3d 553, 563-564 (Cal. Sup. Crt. 1970)). "'California law clearly allows insurers to be reimbursed for attorney's fees' and other expenses 'paid in defending insureds against claims for which there was no obligation to defend.'" *Id.* (quoting *Omaha Indem. Ins. Co. v. Cardon Oil. Co.,* 687 F.Supp. 502, 504 (N.D. Cal. 1988)).

Here, Plaintiff seeks a declaration that it is entitled to reimbursement of defense costs and fees by the insured incurred in the underlying claim. As there is no duty to defend in this case, because the underlying claim is not even potentially covered by the insuring policy, Plaintiff may seek reimbursement.

For the reasons set forth above, the Court finds that the second and third *Eitel* factors weigh in favor of default judgment.

### 3. The Sum of Money at Stake in the Action

Under the fourth factor cited in *Eitel*, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc.,* 238 F Supp.2d at 1176; *see also Philip Morris USA, Inc. v. Castworld Prods., Inc.,* 219 F.R.D. 494, 500 (C.D. Cal. 2003). Here, Plaintiff does not seek any monetary damages. Plaintiff only seeks declaratory relief. Accordingly, this factor does not weigh against entry of default judgment.

### 4. The Possibility of a Dispute Concerning Material Facts

The facts of this case as they pertain to Insured Defendants are straightforward, and Plaintiff has provided the Court with a complaint that contains well-pled allegations and declarations and exhibits in support. Following the clerk's entry of default, the Court may assume

8

the truth of well-pled facts in the complaint and, thus, there is no likelihood that any genuine issue of material fact exists as to the facts that relate to the Insured Defendants. Further, the Insured Defendants' failure to file an answer in this case or a response to the instant motion supports the conclusion that the possibility of a dispute as to material facts is minimal. *See, e.g., Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."). This factor therefore weighs in favor of default judgment.

### 5. Whether the Default Was Due to Excusable Neglect

The sixth *Eitel* factor considers the possibility that Defendants' default resulted from excusable neglect. *PepsiCo, Inc.,* 238 F.Supp.2d at 1177. Courts have found that where a defendant was "properly served with the complaint, the notice of entry of default, as well as the paper in support of the [default judgment] motion," there is no evidence of excusable neglect. *Shanghai Automation Instrument Co. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001).

Upon review of the record, the Court finds that the default was not the result of excusable neglect. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. The Insured Defendants were properly served with the complaint. (Docs. 10, 11, 12, 13, 14.) Plaintiffs mailed a copy of the motion for default judgment to the Insured Defendants' mailing addresses. (Docs. 26 at 30.) Despite ample notice of this lawsuit and Plaintiff's intention to seek default judgment, the Insured Defendants have not appeared to date. Thus, the record suggests that Insured Defendants have chosen not to participate in this action, and not that the default resulted from any excusable neglect. Accordingly, this factor weighs in favor of the entry of a default judgment.

### 6. The Strong Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. *PepsiCo, Inc.,* 238 F.Supp.2d at 1177; *see also Craigslist, Inc. v. Naturemarket, Inc.,* 694 F.Supp.2d 1039, 1061 (N.D. Cal. Mar. 5, 2010). Although the Court is cognizant of the policy

favoring decisions on the merits, that policy is unavailable here because the Insured Defendants have not responded. Accordingly, the Court finds that this factor does not weigh against entry of default judgment.

Upon consideration of the *Eitel* factors as delineated above, the Court concludes that Plaintiff is entitled to the entry of default judgment against Defendants Rita Irene Nunez, Melchor Tatia, and Isaac Quiroz. The Court therefore will recommend that Plaintiff's Motion for Default Judgment (Doc. 26) be GRANTED.

### V.     CONCLUSION AND RECOMMENDATION

Accordingly, based on foregoing, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for default judgment (Doc. 26) be granted;
2. Default judgment be entered in favor of Plaintiff and against Defendants Rita Irene Nunez, Melchor Tatia, and Isaac Quiroz; and
3. The Court declare Plaintiff's rights as follows:
     a. Plaintiff has no duty, and never had a duty, to defend the Insured Defendants against the underlying third-party liability claims,
     b. Plaintiff has no duty, and never had a duty, to indemnify the Insured Defendants in the underlying claim, and
     c. the Insured Defendants are obligated to reimburse Plaintiff all defense fees and costs it has incurred in providing them with a defense in the underlying claim.

///
///
///
///
///
///
///
///

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **April 11, 2022**        /s/ *Barbara A. McAuliffe*
                                               UNITED STATES MAGISTRATE JUDGE