UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENERAL INSURANCE COMPANY OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>RITA IRENE NUNEZ, MELCHOR TATIA, ISAAC QUIROZ, PAUL LOPEZ, VERONICA LOPEZ, and DOES 1 to 10,<br><br>    Defendants. | Case No.  1:21-cv-0150-JLT-BAM<br><br>**FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S MOTIONS FOR DEFAULT JUDGMENT AGAINST PAUL AND VERONIA LOPEZ**<br><br>(Docs. 27)<br><br>**FOURTEEN (14) DAY DEADLINE** |

      On November 16, 2021, Plaintiff General Insurance Company of America ("Plaintiff"), filed two motions for default judgment: (1) against Rita Irene Nunez, Melchor Tatia, and Isaac Quiroz (Doc. 26), and (2) against Paul and Veronica Lopez. (Doc. 27.) The first motion for default judgment against Rita Irene Nunez, Melchor Tatia, and Quiroz was resolved by Findings and Recommendations and partial adoption by District Judge Thurston.[1]  (Doc. 32, 35.)  The motion for default judgment against Paul and Veronica Lopez is currently before the Court for decision.  The Court deemed the matter suitable for decision without oral argument pursuant to

---

[1] In that Order, the Court declared as follows: "The Court DECLARES that Plaintiff has no duty, and never had a duty, to defend the Insured Defendants against the underlying third-party liability claims, [and] b. The Court FURTHER DECLARES that Plaintiff has no duty, and never had a duty, to indemnify the Insured Defendants in the underlying claim."  (Doc. 35.)

1

Local Rule 230(g) and vacated the hearing set for January 7, 2022. (Doc. 28.) Thereafter, the Court requested supplement briefing from Plaintiff regarding service of process on Paul and Veronica Lopez. Plaintiff filed supplement briefing on April 14, 2022. Defendants have not appeared in this action or otherwise filed a timely opposition to the motion.

Having considered the moving papers, the supplemental briefing and the Court's file, the Court RECOMMENDS that Plaintiff's motion for default judgment be GRANTED and that declaratory judgment be entered against Defendants Paul Lopez and Veronica Lopez.

**I.     FACTUAL BACKGROUND**

This is an action for declaratory judgment that Plaintiff General Insurance Company of America has no duty to defend, indemnify or pay Defendants Paul and Veronica Lopez stemming from an underlying action where Defendant Quiroz was charged with providing Alexander Davila ("Decedent") with a controlled substance resulting in Davila's death filed on February 5, 2021. (Doc. 1.)

Plaintiff is the issuer of a homeowner's insurance policy for Defendant Nunez. (Doc. 1, ¶ 11.) Defendant Nunez is the holder of the policy and resides with her husband, Defendant Tatia, and her son, Defendant Quiroz. (Defendants Nunez, Tatia, and Quiroz are collectively "the Insured"). (Doc. 1, ¶7.) Plaintiff alleges it has no duty to defend or indemnify the Insured for any litigation brought against the Insured arising out of or related to the underlying claim based on the terms of the homeowner's policy. (Doc. 27 at 10.)[2] In the Underlying Claim, Paul and Veronica Lopez seek to recover damages against the Insureds for the unfortunate death of their son, Alexander Davila, a friend or acquaintance of Quiroz. (Doc. 27 at 10.) The Underlying Claim was tendered to Plaintiff General by counsel for Paul and Veronica Lopez. *Id.*

Defendants were served with copies of the summons and complaint on July 1, 2021, but failed to appear or otherwise respond. (*See* Doc. 27.) On July 29, 2021, Plaintiff filed a request for entry of default for Defendants Paul and Veronica Lopez. (Doc. 19.) The Clerk of Court entered default against Defendants Paul and Veronica Lopez on July 30, 2021 (Docs. 20, 21.) On

---

[2] Pages numbers refer to the Court's Electronic Case Management pagination.

November 16, 2021, Plaintiff filed the instant motion for default judgment. (Docs. 27.) By the motion, Plaintiff requests declaratory relief that General has never had, nor does it now have, any duty to defend or indemnify the Insureds against the Underlying Claim.

**II. DISCUSSION**

**A. Service of Process**

In deciding whether to grant or deny a default judgment, a court should assess the adequacy of the service of process on the party against whom default is requested. *See, e.g., Farmers Automobile Insurance Ass'n v. Long,* 2014 WL 12773793 at *1 (E.D. Cal. Mar. 13, 2014); *Coach, Inc. v. Diva Shoes & Accessories*, 2011 WL 1483436 at *2 (N.D. Cal. Apr. 19, 2011); *Katzakian v. Check Resolution Service, Inc.*, 2010 WL 5200912 at *2 (E.D. Cal. Dec. 15, 2010).

Federal Rule of Civil Procedure 4 sets forth the requirements for serving an individual within a judicial district of the United States. An individual may be served by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
> > (A) delivering a copy of the summons and of the complaint to the individual personally;
> >
> > (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> >
> > (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

California law, in turn, permits substituted service upon an individual by:

> "leaving a copy of the summons and complaint . . . at his or her usual mailing address . . . with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail."

Cal. Code Civ. P. § 415.20(a).

According to the proofs of service on file, Defendants Paul and Veronica Lopez were

3

served personally at their address of 622 North Kelly Drive, Dinuba, CA, 93618. (Docs. 13, 14.) According to the proof of service on file, Defendants Paul and Veronica were served by substitute service by leaving copies with "John Doe" who is authorized to accept service on behalf of Defendant Paul and Veronica Lopez, at their address 622 North Kelly Dr., Dinuba, CA, 93618. (Docs. 13, 14.)

In General's supplemental briefing, General presents evidence from the certified process server that there were eight attempts to serve Paul and Veronica Lopez. On the eighth attempt, the "John Doe" opened the door of the residence and stated that the "subjects" were not in. General argues Rule 4(e)(2)(B) is satisfied where the "John Doe" identified in the proofs of service was a male located inside the Lopezes' home, who opened the door, when the process server approached the residence to effectuate service. Based on these facts, the Court finds that Plaintiffs properly served the Defendants pursuant to Federal Rule of Civil Procedure 4(e)(1) and (2)(A)-(B).

**B. The *Eitel* Factors Weigh in Favor of Default Judgment**

Pursuant to Federal Rule of Civil Procedure 55(b)(2), a plaintiff can apply to the court for a default judgment against a defendant that has failed to plead or otherwise defend against the action. Fed. R. Civ. P. 55(b)(2). "Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true." *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.,* 722 F.2d 1319, 1323 (7th Cir. 1983); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986); *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1174 (C.D. Cal. 2002). As discussed below, the Court finds that these *Eitel* factors weigh in favor of granting default

judgment.

### 1. Possibility of Prejudice to Plaintiff

The first factor considers whether a plaintiff would suffer prejudice if default judgment is not entered. *See PepsiCo, Inc.,* 238 F.Supp.2d at 1177. Generally, where default has been entered against a defendant, a plaintiff has no other means by which to recover against that defendant. *Id.; Moroccanoil, Inc. v. Allstate Beauty Prods.,* 847 F.Supp.2d 1197, 1200-01 (C.D. Cal. 2012).

Here, the Court finds Plaintiff would be prejudiced if default judgment is not granted and this factor weighs in favor of default judgment. Default judgment has been entered against the Insureds in the action, and thus General has no duty to defend or indemnify the Insureds for the Underlying Claim. Plaintiff could potentially be exposed to inconsistent judgments if default is not entered against Paul and Veronica Lopez. Thus, Plaintiff will be prejudiced if default were denied against Paul and Veronica Lopez.

### 2. Merits of Plaintiff's Claims and Sufficiency of the Complaint

The second and third *Eitel* factors, taken together, "require that [the] plaintiff[s] state a claim on which [they] may recover." *PepsiCo, Inc.,* 238 F. Supp. 2d at 1175. Notably a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DIRECTV, Inc. v. Hoa Huynh,* 503 F.3d 847, 854 (9th Cir. 2007).

####   a. Duty to Defend: The Underlying Claim Does not Fall Within the Insuring Agreement

In determining whether a particular policy provides coverage and a duty to defend, courts interpretate the insurance policy as a question of law. *Waller v. truck Ins. Exchange, Inc,* 11 Cal.4th 1, 18 (1995). In interpreting the policy, the court looks at the language of the contract to ascertain its plain meaning. *Waller,* 11 Cal. 4th at 18. Courts need to consider both the occurrence language in the policy and any endorsements that may expand the coverage. *Id.* Contract provisions will be interpreted for their ordinary and popular meaning, unless otherwise specified. *Id.* However, a provision may be considered ambiguous if there is more than one possible construction that is reasonable. *Id.*

A duty to defend arises when the insurer becomes aware of, or if the third-party lawsuit

pleads, facts that could potentially fall under the coverage of the insuring agreement. *Gray v. Zurich Ins., Co.,* 65 Cal.2d 263, 276 (Cal. Sup. Crt. 1966). Nonetheless, where there is no possibility that the facts plead would be covered, there is no duty to defend. *Waller,* 11 Cal.4th at 19 (citing *Fire Ins. Exchange v. Abbott,* 204 Cal.App.3d 1012, 1029 (Cal. Crt. App. 6th 1988). The determination of whether there is a duty to defends is made by first comparing the allegations of the complaint with the terms of policy. *Id.* Facts that are extrinsic to the complaint may give rise to a duty to defend if they reveal there is a possibility of coverage, conversely, if the extrinsic facts eliminate the potential for coverage an insurer may decline to defend even when the allegations in the complaint imply liability. *Id.*

Here, the policy states:
> "If a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will provide a defense at our expense by counsel of our choice even if the allegations are groundless, false or fraudulent."

(Doc. 27-1, Exh. A at 40-41.) The policy also explicitly excludes the following from coverage:
> "[Personal liability and Medical payment to others] do not apply to bodily injury or property damages which is expected or intended by any insured or which is the foreseeable result of an act or omission intended by any insured; this exclusion applies even if (1) such bodily injury or property damage is of a different kind or degree than expected or intended, or (2) such bodily injury or property damage is sustained by a different person, or persons, than expected or intended."

(*Id.*) Further, the policy provides definitions for both bodily injury and occurrence as follows:
> "'Bodily injury' means bodily harm, sickness or disease, including required care, loss of services and death resulting therefrom."
> "'occurrence' means an accident, including exposure to conditions which results in (1) bodily injury, or (2) property damage."

(Doc. 27-1, Exh. A at 50, 51.) Furthermore, the policy addresses coverage where a criminal act is involved:
> "[Personal liability and Medical payment to others] do not apply to bodily injury or property damages which results from violation of criminal law committed by, or with the knowledge or consent of any insured. This exclusion applies whether to not any insured is charged or convicted of a violation of criminal, or local or municipal ordinance."

6

(Doc. 27-1, Exh. A at 40-41.) Even more specifically, the policy addresses the sale and transfer of controlled substances:

> "[Personal liability and Medical payment to others] do not apply to bodily injury or property damages arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled substance includes but are not limited to cocaine, LSD, marijuana and all narcotic drugs."

(Doc. 27-1, Exh. A at 43.) Fentanyl is a schedule II drug. 21 U.S.C. § 812.

The underlying claim is based on an incident where Defendant Quiroz provided the Decedent with a controlled substance, fentanyl, which the Decedent ingested resulting in his death. (Doc. 26 at 6.) Paul and Veronica Lopez contend that Defendant Quiroz admitted to providing the fentanyl to the Decedent and that the Dinuba Police Department had concluded that Defendant Quiroz's acts caused the death. (Doc. 27 at 16.) Plaintiff argues that Defendant Quiroz's actions cannot be considered an accident or occurrence under the policy because his actions were deliberate. The Court agrees. Defendant Quiroz provided the Decedent with a controlled substance which caused the Decedent's death. Under the policy, coverage does not extend to a bodily injury, including death, which is a foreseeable result of an act of the insured. Death caused by taking a controlled substance is a foreseeable result of providing another with that controlled substance. Further, the policy also excludes any bodily injury that is of a different kind or degree than was intended or expected. Therefore, even if Defendant Quiroz did not intend that the Decedent die from ingesting the fentanyl that was provided, it was foreseeable that death could be a result.

Furthermore, Defendant Quiroz's actions would be a violation of criminal law. As fentanyl is a controlled substance under 21 U.S.C. § 812 its distribution is a criminal act under 21 U.S.C. § 841. The policy excluded bodily injury which results from violation of a criminal law by an insured. That is exactly the case here. Therefore, under the terms of the policy, Plaintiff would not have a duty to defend.

7

### b. Duty to Indemnify

"The duty to indemnify and the duty to defend are correlative." *Certain Underwriters at Lloyds of London v. Superior Court,* 24 Cal.4th 945, 958 (2011) (citing *Ryan v. Royal Ins. Co. of America,* 916 F.2d 731, 735 (1st Cir. 1990). However, the duty to indemnify is only triggered after the amount of damages are fixed and only entails the payment of money. *Certain,* 24 Cal.4th at 958 (citing *Aerojet-General Corp. v. Transport Indemnity Co.,* 17 Cal.4th 38, 46 and 56 (1997)). The duties are also different in scope, as the duty to defend must be broader than the duty to indemnify, as such where there is no duty to defend there can be no duty to indemnify. *Id.; see also Aerojet-General,* 17 Cal.4th at 59; *see also Buss v. Superior Court,* 16 Cal.4th 35, 47, fn. 10 (1997).

Here, there is no duty to defend as the policy by its terms does not cover death where the decedent was provided with a controlled substance by an insured which caused the death. Therefore, there can be no duty to indemnify in this case.

### 3. The Sum of Money at Stake in the Action

Under the fourth factor cited in *Eitel*, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc.,* 238 F Supp.2d at 1176; *see also Philip Morris USA, Inc. v. Castworld Prods., Inc.,* 219 F.R.D. 494, 500 (C.D. Cal. 2003). Here, Plaintiff does not seek any monetary damages. Plaintiff only seeks declaratory relief. (Doc. 27 at 29.) Accordingly, this factor does not weigh against entry of default judgment.

### 4. The Possibility of a Dispute Concerning Material Facts

The facts of this case as they pertain to Defendant Paul and Veronica Lopez is straightforward, and Plaintiff has provided the Court with a complaint that contains well-pled allegations and declarations and exhibits in support. Following the clerk's entry of default, the Court may assume the truth of well-pled facts in the complaint and, thus, there is no likelihood that any genuine issue of material fact exists as to the facts that relate to the Defendants. Further, the Defendants' failure to file an answer in this case or a response to the instant motion supports the conclusion that the possibility of a dispute as to material facts is minimal. *See, e.g., Elektra*

*Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."). This factor therefore weighs in favor of default judgment.

### 5. Whether the Default Was Due to Excusable Neglect

The sixth *Eitel* factor considers the possibility that Defendants' default resulted from excusable neglect. *PepsiCo, Inc.,* 238 F.Supp.2d at 1177. Courts have found that where a defendant was "properly served with the complaint, the notice of entry of default, as well as the paper in support of the [default judgment] motion," there is no evidence of excusable neglect. *Shanghai Automation Instrument Co. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001).

Upon review of the record, the Court finds that the default was not the result of excusable neglect. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Defendants were properly served with the complaint. (Docs. 13, 14.) Despite ample notice of this lawsuit and Plaintiff's intention to seek default judgment, Defendants have not appeared to date. Thus, the record suggests that Defendants have chosen not to participate in this action, and not that the default resulted from any excusable neglect. Accordingly, this factor weighs in favor of the entry of a default judgment.

### 6. The Strong Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. *PepsiCo, Inc.,* 238 F.Supp.2d at 1177; *see also Craigslist, Inc. v. Naturemarket, Inc.,* 694 F.Supp.2d 1039, 1061 (N.D. Cal. Mar. 5, 2010). Although the Court is cognizant of the policy favoring decisions on the merits, that policy is unavailable here because Paul and Veronica Lopez have not responded. Accordingly, the Court finds that this factor does not weigh against entry of default judgment.

Upon consideration of the *Eitel* factors as delineated above, the Court concludes that Plaintiff is entitled to the entry of default judgment against Defendants Paul Lopez and Veronica

///

Lopez. The Court therefore will recommend that Plaintiff's Motion for Default Judgment be GRANTED.

### III. CONCLUSION AND RECOMMENDATION

Accordingly, based on foregoing, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for default judgment (Doc. 27) be GRANTED;
2. Default judgment be entered in favor of Plaintiff and against Defendants Paul Lopez and Veronica Lopez; and
3. The Court declares Plaintiff's rights as follows:
    a. Plaintiff has no duty, and never had a duty, to defend the Insured, against the underlying third-party liability claims, brought against them by the Paul and Veronica Lopez, or any litigation brought against the Insured arising out of, related to, or in any way connected with, the liability claim for Decedent's death; and
    b. Plaintiff has no duty, and never had a duty, to indemnify the Insured in the underlying claim by Paul Lopez and Veronica Lopez.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __June 16, 2022__         /s/ Barbara A. McAuliffe _
                                                     UNITED STATES MAGISTRATE JUDGE